J-S39002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 665 WDA 2024 |

Appeal from the Order Entered May 13, 2024
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s): CP-33-OC-000005A-2024

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:         **FILED: January 8, 2025**

Appellant, T.R. ("Mother") appeals from the May 13, 2024 order entered in the Jefferson County Court of Common Pleas that terminated her parental rights to her now-three-year-old child, A.R. ("Child").[1] Mother's counsel, J.D. Ryan, Esq., has filed a petition to withdraw as counsel and an ***Anders***[2] Brief, to which Mother has not filed a response. Upon review, we grant counsel's petition to withdraw and affirm.

We glean the following factual and procedural history from the certified record. Child is diagnosed with Cystic Fibrosis and requires ongoing specialized medical care. On March 9, 2022, the Jefferson County Children and Youth Services (the "Agency") obtained emergency custody of Child after

---

[1] The trial court also terminated the parental rights of Child's father, who is not a party to this appeal.

[2] ***Anders v. California***, 386 U.S. 738 (1967).

Mother left Child in maternal grandmother's care and was unavailable to sign medical consents for necessary treatments for Child. The trial court adjudicated Child dependent on March 30, 2022, due to a lack of proper parental care and control with specific concerns regarding medical neglect. On September 16, 2022, the Agency returned Child to Mother's care. Once again, Mother began to miss Child's medical appointments and was inconsistent in administering necessary medication to Child.

On January 31, 2023, the Agency once again obtained emergency custody of Child after Mother compromised Child's safety when she absconded with Child without child's medication and appropriate clothing. As a result of this incident, Mother was incarcerated for ninety days, and the Agency placed Child in a pre-adoptive foster home.[3]

The Agency set up Family Service Plan ("FSP") objectives for Mother, including the following: maintain appropriate housing that is medically beneficial for Child, establish and maintain appropriate mental health, complete drug and alcohol assessments, maintain consistent visitation with Child, and independently coordinate and follow through with medical appointments and care for Child.

Mother made minimal progress towards achieving her FSP objections. Mother failed to complete a psychological assessment. Mother is non-

_____

[3] It is unclear from the record if Mother was convicted of a crime and what, if any, crime she was charged with.

compliant with drug and alcohol treatment and has been "cited twice during her probationary period for ongoing substance abuse." *Id.* at 8.

Mother made minimal to no compliance with taking care of Child's medical needs. Mother failed to be proactive about arranging and attending Child's medical appointments. During a visit to Mother's home, the Agency caseworker observed Mother using a vape inside the apartment, which is particularly unhealthy for Child's chronic medical condition. Mother never attended any of Child's medical appointments, despite the Agency offering notice and transportation. Mother attended supervised visits with Child but was unable to properly administer necessary medication during the visits. Specifically, Mother was "unable to properly give [C]hild the liquid thickener for her swallowing so [Child] was not aspirating into her sinuses." *Id.* at 16. On November 3, 2023, the trial court suspended visits between Mother and Child after Child began exhibiting adverse behaviors prior to the visits, including skin-picking and projectile vomiting.

In the Fall of 2023, Dr. Carolyn Menta completed a bonding assessment between Mother and Child. Dr. Menta observed that Child's bond with her foster parents was "secure[] and well[-]noted." N.T. Hearing, 5/6/24, at 4. Dr. Menta noted that Child had a bond with Mother, however, concluded that "the bond was less secure" than Child's bond with her foster parents. *Id.* Dr. Menta opined that even though there was a bond between Child and Mother, it "would not be detrimental" to Child if that bond were severed for the purposes of adoption. *Id.* Finally, Dr. Menta concluded that a termination of

Mother's parental rights and prospective adoption by her foster parents would be in Child's best interest.

On March 14, 2024, the Agency filed a petition to terminate Mother's parental rights. The trial court appointed Greg Sobol, Esq., to serve as Child's legal counsel. The court held a hearing on May 6, 2024. The court heard testimony from Joanna Welch, an Agency caseworker. Mother failed to appear.

Ms. Welch testified in accordance with the above-stated facts. Additionally, Ms. Welch testified that Child is doing very well in the foster home. Ms. Welch explained that Child has Cystic Fibrosis with a double stop mutation, which is significant because "currently right now all of the [Cystic Fibrosis] medications that are available on the market are only one genetic stop mutation, not two[,]" making Child's condition "even more specialized than just your typical [Cystic Fibrosis] diagnosis." *Id.* at 11. Ms. Welch explained that the foster parents have offered Child consistent medical care and, as a result, Child's lung function has stabilized rather than regressed. Specifically, Child has "been able to pass her swallowing tests, she's no longer aspirating into her sinuses that could cause an infection." *Id.* at 11-12. Ms. Welch explained that Child "does remain colonized for MRSA however due to the [foster] family's high practice of – of hygiene and [their] continued attention to her medical needs, there's not been an additional MRSA infection[.]" *Id.* at 12. Ms. Welch explained that due to her positive progress in the foster home, Child has been stepped down to bi-yearly medical

appointments versus quarterly medical appointments. Ms. Welch testified that

"right now, [Child]'s only [Cystic Fibrosis] treatment is the high salts solution,

breathing treatments, the vibrating vest to knock the junk out of her lungs.

Until there is a double stop mutation medication developed for her condition.

Handwashing, lots of handwashing." *Id.* at 13. Ms. Welsh testified that foster

parents take care of all of Child's basic, social, emotional, and specialized

medical needs and that Child's behavior and social skills have improved while

in the home.

On May 10, 2024, the trial court terminated Mother's parental rights to

Child. Mother timely appealed. Both Mother and the trial court complied with

Pa.R.A.P. 1925.

On August 15, 2024, Attorney Ryan filed an *Anders* brief indicating that,

upon review, Mother's appeal is wholly frivolous. Mother failed to respond.

In the *Anders* brief, counsel indicated that Mother wished to raise the

following issues for our review:

I.     Whether the lower court erred in terminating Mother's
       parental rights under 23 Pa.C.S.[] § 2511(a)(1)?

II.    Whether the lower court erred in terminating Mother's
       parental rights under 23 Pa.C.S.[] § 2511(a)(2)?

III.   Whether the lower court erred in terminating Mother's
       parental rights under 23 Pa.C.S.[] § 2511(a)(5)?

IV.    Whether the lower court erred in terminating Mother's
       parental rights under 23 Pa.C.S.[] § 2511(a)(8)?

V.     Whether the lower court erred in determining [that]
       termination was in the best interest of [C]hild, in accordance
       with 23 Pa.C.S.[] § 2511(b)?

*Anders* Br. at 4.

## A.

As a preliminary matter, we address appellate counsel's request to withdraw as counsel. "When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010). In order for counsel to withdraw from an appeal pursuant to *Anders*, our Supreme Court has determined that counsel must meet the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Counsel has complied with the mandated procedure for withdrawing as counsel. Additionally, counsel confirms that counsel sent Mother a copy of the *Anders* brief and petition to withdraw, as well as a letter explaining to Mother that she has the right to retain new counsel, proceed *pro se*, and to raise any additional points. *See Commonwealth v. Millisock*, 873 A.2d 748, 751 (Pa. Super. 2005) (describing notice requirements).

Because counsel has satisfied the above requirements, we will address the substantive issue raised in the **Anders** brief. Subsequently, we must "make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Santiago**, 978 A.2d at 355 n.5 (citation omitted); **see also Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (noting **Anders** requires the reviewing court to "review 'the case' as presented in the entire record with consideration first of issues raised by counsel").

**B.**

In cases involving the involuntary termination of parental rights, this Court's review is limited to determining whether the trial court's conclusion is supported by competent evidence. **In re Adoption of L.A.K.**, 265 A.3d 580, 591 (Pa. 2021). When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id.** (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. **T.S.M.**, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of

- 7 -

the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

It is axiomatic that "[p]arents enjoy a fundamental right to make decisions regarding the care, custody and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent." *L.A.K.*, 265 A.3d at 591 (internal citations omitted). Accordingly, "[i]n recognition of the gravity attendant to the termination of parental rights, the moving party must establish the statutory grounds by clear and convincing evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* at 592 (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). As discussed above, "[t]he party seeking termination must prove by clear and convincing evidence that

the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). We concentrate our analysis on Section 2511(a)(2).

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties. *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015), *abrogated on other grounds by In re K.T.*,

296 A.3d 1085 (Pa. 2023). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019). Notably, a "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citation omitted).

Finally, sincere efforts to perform parental duties may still be insufficient to remedy an incapacity. *Id.* at 1117. This is because subsection (a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being[,]" especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." *Id.* (citation omitted).

Instantly, the trial court found that Mother's continued refusal to provide Child with necessary specialized medical care has caused Child to be without essential parental care, control or subsistence necessary for her physical or mental well-being. The trial court opined:

> [C]hild's medical condition makes it imperative that Mother schedule and keep medical appointments, be available to the medical professionals treating her daughter, and take extra measures necessary to properly treat her at home, as well. Mother could not or would not do any of that. Even with Agency staff and the [c]ourt telling her what she needed to do to appropriately care for [Child], she declined to cooperate. In special cases like this, performing parental duties requires more than is demanded of the average parent, and Mother made it clear over a lengthy period of time that she would not rise to the

- 10 -

challenge for [Child]'s benefit. Her refusal has left [C]hild dependent for well over a year.

Trial Ct. Op., 6/18/24, at 1.

Based on our review, we conclude the court properly exercised its discretion in terminating Mother's parental rights. The court heard undisputed testimony that Mother made minimal to no progress with taking care of Child's medical needs. N.T. Hearing at 8. Mother failed to schedule and attend Child's medical appointments, failed to stop vaping inside of her home, and failed to learn how to administer necessary medication to Child. *Id.* at 8, 12, 16. The record supports the trial court's findings that Mother refused to provide essential parental care for Child. Thus, we discern no abuse of discretion in the trial court's terminating Mother's parental rights pursuant to Section 2511(a)(2).

**C.**

With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. This Court reviews "whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005).

- 11 -

"One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). The fact that a child has a bond with a parent "does not preclude the termination of parental rights." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014). Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary, and beneficial relationship. *Id.* at 898. Moreover, the trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the adoptive resource. *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of the child. *Z.P.*, 994 A.2d at 1121.

Instantly, the trial court found that termination of Mother's parental rights was in Child's best interest. The trial court opined:

> [C]hild has been thriving in the care of her pre-adoptive parents – the people with whom she has most closely bonded – and will continue to have her physical, emotional, developmental, and special medical needs met in their home. As the record reflects, therefore, the [c]ourt did not err in terminating Mother's parental rights; it entered an order that was warranted by her own conduct and would best serve [C]hild's needs.

Trial Ct. Op. at 1-2.

The record supports the trial court's findings. The court heard undisputed testimony that Child has a secure bond with foster parents, who

- 12 -

meet her social, emotional and medical needs, and that it would not be detrimental to Child if Mother's parental rights were terminated. N.T. Hearing at 4. As the record supports the trial court's findings, we discern no abuse of discretion.

**D.**

In summation, following our review of the issues raised in counsel's *Anders* brief, we agree with counsel that the trial court did not abuse its discretion in terminating Mother's parental rights. In addition, our independent review of the proceedings reveals there are no issues of arguable merit to be raised on appeal. Accordingly, we grant counsel's petition to withdraw and affirm the order terminating Mother's parental rights.

Order affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/8/2025